UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY RAY SCOTT,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | No. C-09-1549 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 16-17)** |

On September 16, 2005, Plaintiff Johnny Ray Scott filed an application for Supplemental Security Income ("SSI") benefits. *See* AR 24 (ALJ opinion). Mr. Scott has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Mr. Scott has moved for summary judgment, and the Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Mr. Scott's motion and **DENIES** the Commissioner's.

## I.    FACTUAL & PROCEDURAL BACKGROUND

On September 16, 2005, Mr. Scott filed an application for SSI benefits, in which he alleged disability as of 1986, *see* AR 24 (ALJ opinion), due to knee and back problems, stomach problems, and a mental impairment. *See* AR 103 (notice of disapproved claims, dated 12/5/2005). Mr. Scott's application was initially denied on December 5, 2005, *see* AR 103, and again on reconsideration on November 22, 2006. *See* AR 95 (notice of reconsideration). Mr. Scott then sought an

administrative hearing before an administrative law judge ("ALJ"). *See* AR 60 (request for hearing by ALJ). A hearing was held before ALJ Richard P. Laverdure on June 7, 2007. *See* AR 64 (ALJ hearing transcript). At the hearing, Mr. Scott amended his alleged onset date to September 15, 2005. *See* AR 72 (ALJ hearing transcript).

On November 5, 2007, ALJ Laverdure held that Mr. Scott was not disabled under the Social Security Act. *See* AR 21-33 (ALJ opinion). The ALJ evaluated Mr. Scott's claim of disability using the five-step sequential evaluation process required by the federal regulations. *See* 20 C.F.R. § 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, ALJ Laverdure found that Mr. Scott had not engaged in substantial gainful activity since the amended alleged onset date (*i.e.*, September 15, 2005). *See* AR 26 (ALJ opinion). At step two, the ALJ concluded that Mr. Scott had the following severe impairments: chronic back pain, polysubstance abuse in incomplete remission, and depression. *See* AR 26. At step three, the ALJ determined that Mr. Scott did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the applicable regulations. *See* AR 26-27. The ALJ specifically noted that Mr. Scott's mental impairments (as opposed to physical) did not meet or medically equal the criteria of listings 12.04 or 12.09. *See* AR 26. At step four, ALJ Laverdure found that Mr. Scott had the RFC to perform medium work, with some limitations, both physical and mental. *See* AR 27-28. Finally, at step five, the ALJ stated that Mr. Scott was not able

to perform any past relevant work but concluded that there were jobs that existed in significant numbers in the national economy that Mr. Scott could perform. *See* AR 32-33.

Mr. Scott's request for review of ALJ Laverdure's decision was denied by the Appeals Council on February 3, 2009. *See* AR 5 (notice of Appeals Council decision). In making this ruling, the Appeals Council received additional evidence which it made part of the record. *See* AR 9 (Appeals Council order). After the denial by the Appeals Council, this petition ensued.

In his motion for summary judgment, Mr. Scott argues that the ALJ's decision was erroneous because (1) the ALJ failed to credit the opinions of his treating physician, psychologist, and therapist (which affected, *inter alia*, the ALJ's finding that Mr. Scott did not meet the criteria of listing 12.04, paragraph (B)); (2) the ALJ improperly credited the opinions of state agency medical and psychological consultants; and (3) the ALJ improperly determined that Mr. Scott was not entirely credible. According to Mr. Scott, based on these errors, he is entitled to a remand for an immediate payment of benefits.

## II. DISCUSSION

### A. Legal Standard

A court may disturb the final decision of the Social Security Administration "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993); *see also* SSR 96-2p (noting the same). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (internal quotation marks omitted). The court's review "must consider the record as a whole," both that which supports as well as that which detracts from the Secretary's decision. *Desrosiers v. Secretary of Health & Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "If the evidence admits of more than one rational interpretation, [the court] must uphold the decision of the ALJ." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

B.  Opinions of Medical Sources

In his motion, Mr. Scott argues that the ALJ failed to credit the opinions of his treating physician, Dr. Marilyn McCartney; his treating psychologist, Dr. Susan Wilde; and his treating therapist, Herbert G. Singleton. Mr. Scott goes on to challenge the ALJ's reliance on the opinions of the state agency medical and psychological consultants, who were nonexamining physicians. Each of these medical sources is discussed below.

1.  Treating Medical Source for Physical Impairments

There is no dispute by the parties that Dr. McCartney is an acceptable medical source, *see* 20 C.F.R. § 416.913(a)(1) (stating that a licensed physician is an acceptable medical source), and the record reflects that she provided treatment to Mr. Scott for several years, largely for his physical impairments. *See, e.g.*, AR 355 (August 2003 medical record); AR 347 (September 2003 medical record); AR 335 (January 2004 medical record); AR 334 (January 2004 medical record); AR 322 (March 2004 medical record); AR 318 (June 2004); AR 317 (July 2004 medical record); AR 305 (November 2004 medical record); AR 249 (July 2005 medical record); AR 246 (November 2005 medical record).

As a treating physician, Dr. McCartney's opinion must be given controlling weight so long as it was well supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2); SSR 96-2p. If the opinion is not given controlling weight, then factors to be considered in determining the weight to be given include the supportability of the medical opinion and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 416.927(d); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (discussing the same).

The main opinion provided by Dr. McCartney was in December 2006, when she prepared a medical source statement in support of Mr. Scott's disability claim. *See* AR 451-52 (medical source statement). As explained in the relevant Social Security Ruling,

> [m]edical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.

4

> Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports. Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual.

SSR 96-5p.

In her medical source statement, Dr. McCartney stated, *inter alia*, that Mr. Scott was able to stand and/or walk, with normal breaks, less than two hours in an eight-hour work day because of "chronic low back pain with arthritis, knee pain, [and] shoulder pain." AR 451 (medical source statement). Dr. McCartney also stated that Mr. Scott should not, *e.g.*, climb, stoop, crouch, or crawl because of "chronic back and shoulder and knee limitations." AR 452. Based on the Court's review of the record, this appears to be the first time that Dr. McCartney made a diagnosis of arthritis for Mr. Scott, although a colleague of Dr. McCartney had noted, approximately two months earlier, that Mr. Scott likely had arthritis.[1] *See* AR 238 (October 2006 medical record) (stating "[a]rthritis probable"); *cf. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003) (noting that "Dr. Zwiefach is transmitting both his own knowledge and opinion of Benton and those of the medical treatment team under his supervision"). Most of the doctors at the medical center where Dr. McCartney worked, however, characterized Mr. Scott's physical impairments as a lumbar strain, chronic back and/or leg pain, or something akin to such. *See, e.g.*, AR 294 (January 2005 medical record); AR 281 (February 2005 medical record); AR 276 (February 2005 medical record); AR 259 (March 2005 medical record); AR 256 (April 2005 medical record); AR 252 (April 2005 medical record); AR 249 (July 2005 medical record); AR 243 (March 2006 medical record).

In the case at bar, the ALJ rejected Dr. McCartney's opinion as stated in her medical source statement because "it is not well supported." AR 30 (ALJ opinion). According to the ALJ, Dr. McCartney based her opinion solely on Mr. Scott's allegations of pain: "[A]ll of these self-reported aches and pains by the claimant are subjective, without clinical or laboratory findings to support

---

[1] The Court notes that, back in the spring of 2005, Berkeley Mental Health employees filled out a Brief Crisis Assessment for Mr. Scott which indicated that he suffered from rheumatoid arthritis. *See* AR 213 (Brief Crisis Assessment). However, there is nothing to indicate that these employees (one of which was Mr. Singleton) were trained to perform physical evaluations or otherwise diagnose physical impairments. Nor does it appear that Mr. Scott sought treatment for physical impairments (as opposed to mental) from Berkeley Mental Health.

5

them. Therefore, I must reject much of Dr. McCartney's conclusion, because it is not well supported by medically acceptable clinical and laboratory diagnostic techniques." AR 30.

The Court agrees with the ALJ's basic assessment of Dr. McCartney's medical source statement. Dr. McCartney's opinion was stated in conclusory terms. When asked "WHAT MEDICAL FINDINGS SUPPORT YOUR ASSESSMENT?", Dr. McCartney simply described Mr. Scott's symptoms. *See* AR 451-452 (medical source statement). She did not cite any physical examinations or clinical tests. It thus appears that Dr. McCartney's opinion was based solely on Mr. Scott's allegations of pain. While it is true that Dr. McCartney provided treatment to Mr. Scott over the course of several years and thus her opinion may have been based on extended observations, the medical records appear devoid of any corroborative clinical findings. Indeed, the progress notes repeatedly show that Mr. Scott's back had a full range of motion, both before and after the alleged onset date. *See, e.g.*, AR 322 (March 2004 medical record); AR 318 (June 2004 medical record); AR 305 (November 2004 medical record); AR 249 (July 2005 medical record); AR 246 (November 2005 medical record). Also, an x-ray taken in October 2006 showed no degenerative joint disease or fractures, *see* AR 484 (November 2006 medical record), and medical tests conducted prior to the alleged onset date do not suggest limitations of the kind claimed by Dr. McCartney. *See, e.g.*, AR 374 (March 2002 medical record) (showing no positive straight leg raising test); AR 367 (showing no positive straight leg raising test; also indicating tone and strength in lower extremities). Further, as noted above, Dr. McCartney's diagnosis of arthritis is not well supported by any clinical or diagnostic tests.[2] *Cf. Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 n.8 (9th Cir. 2007) ("disagree[ing] with the dissent's characterization of [a doctor's opinion] as 'conclusory and inadequately supported by clinical findings'" because the doctor supported his opinion with "more than 50 pages of medical reports and clinical findings based on three years of treatment and objective physical evidence,

---

[2] The Court notes that because the medical records clearly did not support Dr. McCartney's opinion, the ALJ was not obligated to solicit additional information from her. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (noting that the duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); SSR 96-5p (stating that, "[f]or treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and *the bases for such opinions are not clear to us*") (emphasis added).

including X-rays, lab tests, physical examinations, and the diagnostic surgery that [the doctor] himself performed").

Finally, the Court notes that Dr. McCartney's opinion is in conflict with other substantial evidence in the record. A state agency medical consultant determined that there were less restrictive limitations than did Dr. McCartney. *See* AR 216-23 (physical RFC assessment, dated 11/9/2005). Although the consultant was not an examining physician, "reports of [a] nonexamining advisor . . . may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Accordingly, the ALJ was not required to give controlling weight to Dr. McCartney's opinion and was entitled to reject it as not well supported. In fact, it was contradicted by the record, including the report of a nonexamining physician.

### 2. Treating Medical Sources for Mental Impairments

For his mental impairments, Mr. Scott received treatment from Dr. Wilde and Mr. Singleton, both affiliated with the same institution, *i.e.*, Berkeley Mental Health. The record reflects that Mr. Scott received fairly consistent treatment from Berkeley Mental Health for approximately a year, in 2005 and 2006. *See* AR 185-213, 453-63 (medical records). It is undisputed that Dr. Wilde is an acceptable medical source, *see* 20 C.F.R. § 416.913(a)(2) (stating that a licensed or certified psychologist is an acceptable medical source), and that Mr. Singleton qualifies as an other medical source. *See id.* § 416.913(d)(1) (noting that other than acceptable medical sources there are medical sources whose opinions may be considered to show the severity of a claimant's impairment and how it affects the claimant's ability to work; listing as examples nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists). It is also undisputed that both Dr. Wilde and Mr. Singleton were treaters.

Based on the administrative record, it appears that Mr. Scott began to seek treatment from Berkeley Mental Health in the spring of 2005. A Brief Crisis Assessment was conducted at that time, which was signed by, *inter alia*, Mr. Singleton. Mr. Scott was diagnosed with major depressive disorder along a substance-related disorder in early partial remission. Mr. Scott was

7

given a GAF[3] score of 40. *See* AR 213 (Brief Crisis Assessment). "GAF scores reflect a clinician's judgment about the individual's overall level of functioning." *Moss v. Astrue*, No. 1:08-CV-211, 2009 U.S. Dist. LEXIS 62069, at *5-6 n.3 (N.D. Ind. July 20, 2009) (citing DSM-IV), "A GAF score of 31 to 40 reflects some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* at *6.

Subsequent to the initial assessment, both Dr. Wilde and Mr. Singleton filled out evaluation forms for mental disorders in support of Mr. Scott's disability claim. More specifically, in August 2005 (right before the alleged onset date), Dr. Wilde submitted an initial report.[4] *See* AR 188-91 (evaluation form). Based on testing, including a Rorschach inkblot test, Dr. Wilde stated, *inter alia*, that Mr. Scott likely had "marked intellectual limitations," which made it difficult for him to process information and to remain focused on a task." AR 189-90. In addition, he suffered from major depression and was "extremely emotionally withdrawn and isolated," which made it difficult for him to function well socially. AR 189-90. Dr. Wilde gave Mr. Scott a GAF score of 22. *See* AR 191. "A GAF score of 21 to 30 indicates that behavior is considerably influenced by delusion or hallucinations, or serious impairment in communication or judgment, or inability to function in almost all areas." *Moss*, 2009 U.S. Dist. LEXIS 62069, at *5-6 n.3 (citing DSM-IV).

In the conclusion of her report, Dr. Wilde noted that

> [i]t is likely that although the demands of work such as attendance and punctuality could be met by Mr. Scott while no additional stress is present, under even small amounts of duress Mr. Scott will blur thinking with affect which he has limited capacity to tolerate, and become paralyzed with helplessness, poor concentration, decision making, and/or poor problem solving. Likely under these circumstances, he will be unable to continue and may even flee the work scene.

AR 190. As for a prognosis, Dr. Wilde stated that Mr. Scott's "motivation for treatment is favorable for a prognosis including some level of improvement," but added that, even if Mr. Scott's depression

---

[3] GAF is an acronym for global assessment of functioning.

[4] The form was co-authored by Stephanie D. King, MSWI.

8

improved, "[d]ue to his low self-esteem and interpersonal skills deficits, it would be . . . difficult for [him] to maintain a job that requires significant social interaction." AR 191.

In mid-2007, almost two years after Dr. Wilde's report, Mr. Singleton submitted a second evaluation form for mental disorders in support of Mr. Scott's disability claim. *See* AR 503-05 (evaluation form). In his report, Mr. Singleton noted that Mr. Scott's depression had improved some, although it still persisted. *See* AR 504. Mr. Singleton also noted that Mr. Scott was capable of doing daily activities – *e.g.*, properly care for personal affairs, do shopping, pay bills, maintain a residence – *see* AR 504, which was an improvement over what Dr. Wilde had assessed. *Compare* AR 189 (stating that "Mr. Scott's depressive, odd, avoidant, and overwhelmed patterns of relating to the world and to himself have severely limited his ability to care for himself financially, to secure adequate permanent living arrangements and to establish and maintain relationships"). Mr. Singleton added, however, that Mr. Scott still tended to isolate himself and that he had a "hard time following logical conversations or complex instructions" or doing complicated tasks. AR 503-04. Thus, Mr. Singleton gave Mr. Scott a score GAF 31. *See* AR 505. According to Mr. Singleton, "[Mr. Scott] won't do well with stress in a wo[r]k environment and he is not good at making decisions. He would need to be in a situation where someone is directing him at all times. However, he would view this as some 'Riding' him." AR 504. Mr. Singleton added that he did not expect Mr. Scott's condition to improve. *See* AR 505.

The ALJ took account of both Dr. Wilde's August 2005 report as well as Mr. Singleton's 2007 report. With respect to Dr. Wilde's report, the ALJ discounted the opinions stated therein because he found that they were not supported by the progress notes and because they did not discuss the effect of Mr. Scott's use of drugs and alcohol on his ability to function. *See* AR 31 (ALJ opinion). ALJ Laverdure also indicated that Dr. Wilde's report was to be given less weight because Mr. Scott had shown improvement, particularly with respect to his depression, as reflected not only in the progress notes but also in Mr. Singleton's report. *See* AR 30-31; *see also* AR 462 (February 2006 medical record) (reflecting client statement that depression being managed); AR 461 (March 2006 medical record) (reflecting client statement that going to school every day and that "[t]hings are going fine"); AR 459 (March 2006 medical record) (reflecting client statement that "[n]o major

1 problems to report"); AR 456 (May 2006 medical record) (reflecting client statement that still in
2 school and interested in finding employment); AR 455 (May 2006 medical record) (noting that
3 client "more upbeat than I had seen since we have been working together"); AR 454 (May 2006
4 medical record) (reflecting client statement that doing well and motivated to go to work). Finally,
5 the ALJ suggested that there may have been inaccuracies in the report because Mr. Scott may not
6 have been forthright with Dr. Wilde about his condition. *See* AR 31 (ALJ opinion) (stating that "the
7 claimant misrepresented a diagnosis of 'rheumatoid arthritis,' greatly undermining his credibility
8 regarding his other symptoms).

9       As for Mr. Singleton's report, ALJ Laverdure stated that his opinions could not be accorded
10 "significant weight" because he was not an acceptable medical source.[5] *See* AR 31. The ALJ also
11 discounted Mr. Singleton's opinions because they did not discuss the effect of Mr. Scott's use of
12 drugs and alcohol on his ability to function. *See* AR 31.

13       The Court concludes that the ALJ erred in rejecting the opinions of Dr. Wilde and Mr.
14 Singleton. First, because Dr. Wilde is an acceptable medical source who treated Mr. Scott, her
15 opinions had to be given controlling weight so long as they were well supported by medically
16 acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in
17 the record. *See* 20 C.F.R. § 416.927(d)(2); SSR 96-2p. While the ALJ did not made any express
18 finding that Dr. Wilde's opinions were not entitled to controlling weight, he implicitly refused to
19 afford such weight in rejecting Dr. Wilde's opinion. In doing so, he did not address whether her
20 opinions were supported by acceptable clinical and diagnostic techniques.[6] Rather, he only

---

[5] The Court notes that, even though the ALJ gave little weight to the Singleton report at step four, he appeared to give a fair amount of weight to the report at step three.

[6] Notably, the ALJ did not take issue with the diagnostic techniques used by Dr. Wilde and Mr. Singleton. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Dr. Gehlen's opinion is competent psychiatric evidence, based on his clinical observations of Mrs. Sprague's depression. Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings.") (internal quotation marks omitted); *Clester v. Apfel*, 70 F. Supp. 2d 985, 990 (S.D. Iowa 1999) ("[T]he Commissioner argues that Dr. Yeltatzie did not perform any testing upon which to base his opinion. On the contrary, Dr. Yeltatzie performed a mental status examination. The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

concluded that her opinions were not supported by the progress notes. *See* AR 31 (ALJ opinion). Contrary to what the ALJ stated, the bulk of Dr. Wilde's opinions did find support in the treatment notes. The medical records are replete with references to Mr. Scott's depression, including as noted above the Brief Crisis Assessment conducted in the spring of 2005. *See, e.g.*, AR 213 (Brief Crisis Assessment) (diagnosing major depressive disorder); AR 208 (May 2005 medical record) (stating that client "is suffering from severe depression"); AR 198 (July 2005 medical record) (noting that client "depressed, worried and concerned about his future" and that he has "a lack of self worth" and is "isolat[ed]" without any support system); AR 187 (September 2005 medical record) (noting that "[d]epression prevented [client from] looking [for] work and taking care of his basic needs"). While it is true that Dr. Wilde's extremely low GAF assessment of 22 does not appear to be supported by the record – *e.g.*, it is not consistent with the Brief Crisis Assessment which had a GAF score of 40, *see* AR 213 (Brief Crisis Assessment) and the latter evaluation by Mr. Singleton in 2007 which had a GAF score of 31, *see* AR 506 (evaluation form) – that does not necessarily negate the history of debilitating depression evidence in the record.

The ALJ's other reasons for discounting Dr. Wilde's opinions are also problematic. With respect to the ALJ's discounting of Dr. Wilde's opinions based on Mr. Scott's misrepresentation of a diagnosis of rheumatoid arthritis, it is not clear why such a singular misrepresentation should negate her assessment, particularly since there was a reasonably extensive relationship between Mr. Scott and the medical sources at Berkeley Mental Health. Moreover, even if Mr. Scott had not actually been diagnosed with arthritis at the time that he was evaluated by Dr. Wilde, the record clearly reflects that Mr. Scott was being treated for physical pain, for which he received multiple prescriptions. He may well have believed he had rheumatoid arthritis, as was reported in the Brief Crisis Assessment in the spring of 2005. *See* AR 213 (Brief Crisis Assessment). As to the lack of any discussion on the effect of Mr. Scott's drug use on his ability to function, Dr. Wilde's evaluation notes that Mr. Scott had not used drugs for seven months and was attending NA meetings. *See* AR 188 (evaluation form). As to the medical records which indicated that Mr. Scott's condition had improved, the period of improvement lasted only four months. Furthermore, Dr. Wilde's evaluation indicated that self-reports of improvement may in fact have been symptomatic of Mr. Scott's

syndrome. *See* AR 190 (noting that Mr. Scott "denies the presence of irritating or unpleasant emotion or emotional stimulation by substituting a false positive emotion or emotional value to the situation"). Finally, it is significant that, with respect to a prognosis, Dr. Wilde stated that Mr. Scott's "motivation for treatment is favorable for a prognosis including some level of improvement," but added that, even if Mr. Scott's depression improved, "[d]ue to his low self-esteem and interpersonal skills deficits, it would be . . . difficult for [him] to maintain a job that requires significant social interaction." AR 191.

In any event, even if Dr. Wilde's opinions were not entitled to controlling weight, the ALJ was obligated to go through the factors listed in 20 C.F.R. § 416.927(d) to determine what kind of weight to give her opinions. *See* 20 C.F.R. § 416.927 (stating that the following factors are considered in determining what weight to give a medical opinion: (1) the examining relationship, (2) the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the medical source, and (6) other factors that "tend to support or contradict the opinion"); *see also Orn*, 495 F.3d at 631 (discussing factors). This the ALJ did not clearly do in a sufficiently comprehensive way.

The ALJ's disregard of Mr. Singleton's report also suffers from multiple problems. The ALJ's primary reason for discounting Mr. Singleton's opinions was because he was not an acceptable medical source. *See* AR 31 (ALJ opinion). However, the fact that Mr. Singleton was not an acceptable medical source does not mean that, under the law, his opinion was automatically to be given less weight. The opinion of a medical source other than an accepted medical source may be accorded weight depending on the factors listed in 20 C.F.R. § 416.927(d) – *i.e.*, how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the claimant's impairment, and any other factors that tend to support or refute the opinion. *See* SSR 06-3p. Indeed, Social Security Ruling 06-3p specifically states that, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may* [even] *outweigh* the

opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-3p (emphasis added).

In the instant case, there is an insufficient showing that the ALJ made a complete consideration of the above factors specified in § 416.927(d) in evaluating Mr. Singleton's opinions. At best, the ALJ noted that Mr. Singleton's report did not discuss the effect of the use of drug and alcohol on Mr. Scott's ability to function. *See* AR 31 (ALJ opinion). That singular finding was not a sufficient demonstration that the ALJ considered all relevant factors under § 416.927(d). Moreover, it should be noted as a factual matter that Mr. Singleton's report did briefly touch on the issue of drug and alcohol use and thus Mr. Singleton was aware of it. *See* AR 505 (evaluation form) (noting that Mr. Scott "may resort to increase[d] intake of alcohol to cope with his situation" and that "[t]he next time he enters the mental health system he may be diagnosed Depression with Psychotic features because [of] the possible increase in the use of Alcohol and drugs"). Finally, it should be noted that, while Mr. Singleton, as stated above, found improvement in Mr. Scott's mental condition, he still had significant reservations about Mr. Scott's mental condition, giving him at most a GAF score of 31. As noted above, Mr. Scott's period of improvement in which he sought to find work lasted for only a short time, and, by the time of Mr. Singleton's assessment in 2007, Mr. Scott had dropped out of the work training program. *See* AR 504.

In short, the assessments of Dr. Wilde and Mr. Singleton – both treating medical sources – are largely consistent and are supported by much of the record. The ALJ's dismissal of their opinions was too conclusory relative to the extensive record and fails to address the facts which should inform the degree of weight to be accorded to the treating medical sources. *See* 20 C.F.R. § 416.927(d); *Orn*, 495 F.3d at 631 (discussing factors). Because the Court finds error here, and because the Court concludes that a remand for further proceedings is appropriate, the Court does not address the parties' arguments as to whether the ALJ's finding that Mr. Scott did not meet the criteria of listing 12.04, paragraph (B) was proper. Whether or not Mr. Scott met the criteria of listing 12.04, paragraph (B) will be informed by what weight the ALJ accords to the opinions of Dr. Wilde and Mr. Singleton.

1    As a final point, the Court notes that, in his motion, Mr. Scott suggests that the ALJ's error in
2 inadequately assessing Mr. Singleton's report was compounded by the Appeals Council's
3 inadequate assessment of a second report submitted by Dr. Wilde in February 2008 (*i.e.*, submitted
4 after the ALJ had issued his decision).[7] *See* AR 11-15 (evaluation form). The Court rejects the
5 argument. As the Appeals Council noted in its opinion, the ALJ had decided Mr. Scott's case
6 through November 7, 2007, only. Therefore, Dr. Wilde's February 2008 report – an evaluation
7 based on only one visit in January 2008, *see* AR 11 (evaluation form) – was not material to this
8 appeal. *See* 20 C.F.R. § 416.1470(b) ("In reviewing decisions based on an application for benefits,
9 if new and material evidence is submitted, the Appeals Council shall consider the additional
10 evidence *only where it relates to the period on or before the date of the administrative law judge*
11 *hearing decision*.") (emphasis added); *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990)
12 ("Social Security regulations provide that where new and material evidence is submitted to the
13 Appeals Council with the request for review, the entire record will be evaluated and review of the
14 ALJ's decision will be granted where the Appeals Council finds that the ALJ's action, findings, or
15 conclusion is contrary to the weight of the evidence currently of record. The Appeals Council shall
16 consider any new and material evidence *only where it relates to the period on or before the date of*
17 *the ALJ's decision*.") (emphasis added). This was not a situation where the Appeals Council
18 considered new material on the merits, in which case the Court would have an obligation to consider
19 the evidence. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (stating that, where
20 claimant submitted additional materials to the Appeals Council in requesting review of the ALJ's
21 decision, "we may properly consider the additional materials because the Appeals Council addressed
22 them in the context of denying Appellant's request for review"); *Ramirez v. Shalala*, 8 F.3d 1449,
23 1451-52 (9th Cir. 1993) (noting that, where the Appeals Council declined to review the decision of

---

[7] Dr. Wilde's February 2008 report indicated that, even if there had been improvement in Mr. Scott's mental condition in the past, he had since regressed. Dr. Wilde's conclusions were based on a more extensive evaluation than previously conducted; in addition to a clinical interview and a Rorschach inkblot test, trailmaking tests were and projective drawings were also conducted. *See* AR 11 (evaluation form).

14

the ALJ after examining the entire record, including new material, a court should consider both the ALJ's decision and the additional materials submitted to the Appeals Council).

### 3. Nonexamining Medical Sources

As noted above, Mr. Scott argues not only that the opinions of his treating sources were improperly discounted but also that the opinions of nonexamining sources – *i.e.*, state agency consultants – were improperly credited.

> State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues . . . .

SSR 96-6p. "[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

In the instant case, the ALJ relied on the opinions of state agency consultants both with respect to physical and mental impairments. *See* AR 31 (ALJ opinion) (referring to Exhibits 3F (physical) and 10E (mental) in administrative record). The Court concludes that the opinions on physical impairments are supported by evidence in the record, including the progress notes of the medical center where Dr. McCartney worked. *See* AR 216-23 (physical RFC, submitted by Dr. Tysell). However, the state agency consultant's opinions on mental impairments must now be re-evaluated in light of the Court's ruling above regarding the Wilde and Singleton reports. The weight of those consultant's opinions should be assessed in light of 20 C.F.R. § 416.927(f) and SSR 96-6p.

## C. Credibility

Finally, in his motion, Mr. Scott contests the ALJ's finding regarding Mr. Scott's credibility. In his opinion, ALJ Laverdure found that Mr. Scott's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 31 (ALJ opinion).

"A symptom is an individual's own description of his or her physical or mental impairment(s)." SSR 96-7p. "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether an individual is disabled depends on the credibility of the statements." SSR 96-7p. In evaluating credibility, an ALJ must "consider all of the available evidence, including [the claimant's] history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how [the claimant's] symptoms affect [him or her]." 20 C.F.R. § 416.929(c)(1). An ALJ's "determination or decision [on credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Furthermore, an ALJ must have clear and convincing reasons for finding a claimant not credible (either in whole or in part). *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Notably, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p. Indeed, "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." SSR 96-7p. Accordingly, other factors that an ALJ

> must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements [are as follows]:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

16

>   6.   Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>   7.   Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; *see also* 20 C.F.R. § 416.929(c)(3) (listing factors).

In the instant case, ALJ Laverdure provided a variety of specific reasons why he did not find Mr. Scott to be entirely credible. The ALJ noted first that the objective medical evidence did not support at least the physical symptoms claimed by Mr. Scott – *e.g.*, there was "no evidence of a positive straight leg raising test, reduced muscle strength, or reduced sensation of motion." AR 29 (ALJ opinion). Also, "[a]n X-ray apparently taken in October 2006 was negative for fracture or degenerative joint disease." AR 29-30. The ALJ further noted that, despite claims of a bulging spinal disc, there was no evidence of such. *See* AR 29-30 (noting that there was no, *e.g.*, X-ray, MRI, or CT scan "to confirm counsel's assertion about a bulging disc"); *see also* AR 75-76 (ALJ hearing transcript) (Mr. Scott referring to problems with disc).

ALJ Laverdure, however, did not consider objective medical evidence alone. He also considered the factors enumerated above, as for example, when he noted that Mr. Scott often sought treatment for back pain because he had been doing heavy work – *e.g.*, yard work or moving furniture. *See* AR 29. *See, e.g.*, AR 386 (April 2001 medical record) (referring to moving furniture); AR 372 (March 2002 medical record) (referring to yard work); AR 355 (August 2003 medical record) (referring to day labor); AR 347 (September 2003 medical record) (referring to yard work); AR 321 (April 2004 medical record) (referring to yard work); AR 305 (November 2004 medical record) (referring to heavy lifting doing janitorial work); AR 288 (January 2005 medical record) (referring to yard work). The ALJ also had concerns about Mr. Scott's credibility based on (1) a statement by a treating medical source that Mr. Scott's visit to the emergency room was based in part on his effort to seek Vicodin, *see* AR 484 (November 2006 medical record); (2) Mr. Scott's claim to Dr. Wilde in 2005 that he suffered from arthritis, well before any diagnosis had been made

in 2006[8]; (3) Mr. Scott's denial, at the ALJ hearing, of any drug use even though he had tested positive for cocaine approximately a year before the hearing; *see* AR 481 (April 2006 medical record) (showing positive test for cocaine); AR 81 (ALJ hearing transcript) (Mr. Scott claiming no alcohol use for thirteen months and no drug use ever); and (4) Mr. Scott's testimony at the hearing that he was only depressed on occasion, even though his treating medical sources concluded that the depression was profound. *See* AR 78 (ALJ hearing transcript) (Mr. Scott stating that "on occasion" he still feels depressed). Finally, the ALJ made note that Mr. Singleton's 2007 report indicated that Mr. Scott was capable of handling his activities of daily living (*e.g.*, shopping, paying bills, maintaining a residence), *see* AR 504 (evaluation form), and further observed that, at the hearing before the ALJ, Mr. Scott "was responsive, alert, able to understand and answer questions without difficulty." AR 31 (ALJ opinion).

In his motion, Mr. Scott contests only some of the reasons provided by the ALJ in support of his finding of partial credibility. The arguments are problematic and, even if credited, are not controlling. First, the treating medical source in the emergency room did not simply refer to *possible* Vicodin seeking; rather, the source stated that there was a Vicodin-seeking component (albeit only some). *See* AR 484 (November 2006 medical record). In addition, even though this was an assessment made by only one treating medical source, and no others, and thus should arguably be given less weight, that does not detract from the other reasons underlying the ALJ's credibility finding. Second, as discussed above, the ALJ correctly noted that Mr. Scott made a claim to Dr. Wilde in 2005 that he was suffering from arthritis even though there is no evidence in the record showing that he was diagnosed with that physical impairment at that date.[9] Finally, the fact that there may have been a medical reason underlying Mr. Scott's alleged "under-reporting" of his level of depression does not mean that the ALJ was not entitled to question his credibility as a result,

---

[8] ALJ Laverdure stated that there was no medical evidence in the record to support the claim of rheumatoid arthritis. *See* AR 30 (ALJ opinion).

[9] As noted above, in the spring of 2005, Berkeley Mental Health employees filled out a Brief Crisis Assessment for Mr. Scott which indicated that he suffered from rheumatoid arthritis. *See* AR 213 (Brief Crisis Assessment). However, there is nothing to indicate that these employees were trained to perform physical evaluations or otherwise diagnose physical impairments. *See* note 1, *supra*.

particularly in light of the other reasons identified by the ALJ in questioning Mr. Scott's credibility. In short, even if there were, as argued by Mr. Scott, problems with some of the reasons tendered by the ALJ, there still remained a host of other reasons that supported the ALJ's finding of partial credibility. Because the ALJ provided specific reasons and had clear and convincing reasons to support his credibility finding, the Court finds no error here.

2.  <u>Remand</u>

Under Ninth Circuit law,

> [r]emand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In the instant case, the Court has found that the ALJ erred in failing to provide legally sufficient reasons for rejecting the Wilde and Singleton reports. More specifically, the ALJ should have expressly determined whether Dr. Wilde's opinions were to be accorded controlling weight, and if not, why. Absent controlling weight, the opinions of Dr. Wilde should have been evaluated pursuant to the factors listed in 20 C.F.R. § 416.927(d). Likewise, the opinions of Mr. Singleton should have been evaluated pursuant to the § 416.927(d) factors. Remand is thus warranted. The Court finds it appropriate not to deem the opinions credited per se on remand. *Cf. Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (noting that there is "some flexibility in applying the 'crediting as true' theory" with respect to claimant credibility); *Vasquez v. Astrue*, 547 F.3d 1101, 1106-07 (9th Cir. 2008) (noting that there is a split in the Ninth Circuit regarding the credit-as-true rule). Although the two opinions are largely consistent, they are not entirely so (*e.g.*, in their GAF assessments). Moreover, remand is additionally warranted because it is not clear from the record that Mr. Scott would be disabled if the reports were credited partially or fully. *See Harman*, 211

F.3d at 1178 n.7 (noting that the above "three-part test really constitutes a two part inquiry, wherein the third prong is a subcategory of the second: if the ALJ were not 'required to find the claimant disabled' upon crediting the evidence, then this certainly would constitute an 'outstanding issue[] that must be resolved before a determination of disability [could] be made'").

Accordingly, the Court orders a remand for further administrative proceedings. *See, e.g.*, *id.* at 1180 (noting that, "in cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits"); *Barrera v. Astrue*, No. SACV 08-1084 (CW), 2009 U.S. Dist. LEXIS 61944, at *11-12 (C.D. Cal. June 30, 2009) (concluding that "Plaintiff's entitlement to benefits is not clear because Dr. Maistros offered no clear opinion as to whether Plaintiff had any functional limitations as a result of her seizures which would direct a finding of disability on the basis of the current record"; adding that there were also "unresolved questions as to whether Plaintiff continues to use drugs and alcohol and, if so, whether such use is a contributing factor material to a finding of disability").

### III. CONCLUSION

For the foregoing reasons, the Court grants Mr. Scott's motion for summary judgment and denies the Commissioner's. The case is remanded for further administrative proceedings consistent with this opinion.

The Clerk of the Court is directed to enter judgment in favor of Mr. Scott and close the file in this case.

This order disposes of Docket Nos. 16 and 17.

IT IS SO ORDERED.

Dated: October 29, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge